Case number 23-5006, Sylvia E. Farrington, appellant, v. Alejandro N. Mayorkas, in his official capacity as the Secretary of the U.S. Department of Homeland Security and United States Department of Homeland Security. Ms. Leis for the appellant, Mr. Walker for the appellate. Good morning, your honors. May it please the court, my name is Catherine Leis and I represent the appellant Sylvia Farrington. Again, I'd like to reserve two minutes for rebuttal. The district court's decision to dismiss Ms. Farrington's complaint should be reversed for two basic reasons. The first is that the court used the higher standard typically used in Rule 56 motions for summary judgment instead of the Rule 12b6 motion standard that should have been applied in analyzing the sufficiency of her claims. Second, Ms. Farrington plausibly alleges several facts that bear upon causation, which is the main reason that we are here today. The appellee, Efima, does not dispute the first two allegations of the claim, one being that Ms. Farrington alleged unprotected activity and the second being that she suffered from an adverse action. So really, we're here today to discuss causation and whether Ms. Farrington sufficiently pled facts that bear upon causation and pretext. So I'm going to start briefly with the standard issue. The district court improperly applied a higher standard of proof used at the motion for summary judgment stage instead of the standard that should have been used for a motion to dismiss. In fact, every case cited by the district court was decided at the motion for summary judgment stage or the motion notwithstanding a verdict stage, Rule 50 and Rule 56, rather than Rule 12. So Efima argues that these cases are instructive, and we agree they are instructive, to show what a plaintiff needs to do to get to a jury trial, not to get to the discovery stage, which is where this complaint should have proceeded. Well, they're instructive in that you have to plead facts that, you know, when you review them, take them in the light most favorable to the plaintiff, if proven, would make a claim.  And so to the extent that there's cases out there that talk about what evidence is or is not sufficient, they're going to be relevant to what facts being pled are or not sufficient, right? Correct. Yes. And that brings me to my second point, which is the facts that Ms. Farrington alleged. She alleged facts that directly bear upon causation in this case. What's primarily briefed both at the district court level and before your honors is the issue of temporal proximity. While we admit that there was a large gap between the first EEO complaint that Ms. Farrington filed, you have to look at the ongoing continuing acts of protected activity that Ms. Farrington engaged in. So we're looking at not only the first complaint, but also her and her counsel's attempts to argue discrimination as it relates to the initial 2005 EEO complaint. So when we're looking at temporal proximity, FEMA repeatedly argues that the time gap is just too large. And yes, that may be true, but we're looking at a pattern. We're looking at a continued engagement in protected activity, which should have afforded Ms. Farrington the protection and thereby shortening the time gap that the court could look at when examining temporal proximity. But it goes beyond that, right? So we have... Well, for that argument, the suggestion must be that there are alleged facts of protected activity closer to 2015. Correct. That the district court gave you credit for. And so what are those specific allegations? Sure. So there's a few different instances that we can look at. The first is as it relates to this issue of Ms. Farrington's debt. So FEMA argues that the reason for Ms. Farrington's termination was that she had this outstanding debt that was raised in a background check. Throughout that entire process, Ms. Farrington and her counsel were opposing the reason for this debt in the first place. They were arguing this is because of the original act of discrimination and the agency's ongoing failure to abide by the EEOC's order, which is actually continuing to date in the district court. So we're not just looking at 2005. We're not just looking at 2012. We're looking at every instance that Ms. Farrington and her prior counsel communicated to the agency. This is the reason for the debt. The reason for the debt is... So if I was going to look in the complaint or the allegation that says we complained about the debt in 2013, 2014, or early 2015, where would I find that? So we don't have the exact dates because it was ongoing in every instance, but... Is there an allegation that it was ongoing? Joint Appendix, page 10, paragraph 28 discusses... So Ms. Farrington alleges that the outstanding debt was caused by the financial hardship attributable to the defendant's discriminatory actions and defendant's ongoing failure to comply with the AJ's or the EEOC's order. They had paid her a substantial amount. Yes, that is... How much was it? I believe it was $410,000 in back pay and a smaller sum in compensatory damages. And she's alleging that she has a major credit card debt, notwithstanding having received the bulk of the award. Yes, that is correct. And I don't believe that it's outlined specifically in the complaint in maybe as much detail as it could have or should have been. But that back pay award was disputed from the very beginning. So that money was not ever touched by Ms. Farrington. So it's really... Yes, it is... It was received, but she chose not to... Because it was in dispute, you know, I believe it was the advice of her counsel not to touch the money until the dispute was resolved. And that dispute has not yet been dissolved. They weren't claiming that it was going to be clawed back. They were claiming that they didn't owe her anymore. And she was claiming that they did. In a subsequent proceeding, they did actually argue that it was... that they did overpay her and that she owed approximately $100,000. So the debate, what she owed and what she may have owed back to the agency was in progress and really never fully resolved up until present date. To get back to Judge Garcia's question, where did you say in the complaint that we are engaged in protected activity? I mean, saying that I have a debt that's caused by a failure to comply with a prior order. How does that tell the district court that I'm still engaged in protected activity? So it's less so engagement in protected activity, more so opposition to the discrimination. So in that sentence that I cited to Judge Garcia, paragraph 28 of the complaint, she talks about the ongoing failure in her efforts to get the EEOC to comply with the order. So no, she did not necessarily engage in protected activity aside from the two EEO complaints, but she consistently opposed the debt as it related to the underlying discrimination that occurred. But we don't have any timing on paragraph 28, nor who the explaining was directed at. I had actually originally. Yeah. So so as explained by Miss Farrington, her attorney, the outstanding debt was caused by the financial hardships directly attributable to defendants, discriminatory action. Defendants ongoing failure to comply with the order, as well as the unfair and unlawful predatory lending practices. Is there any allegation that that was that FEMA was told that that was her view? There are no other allegations in the complaint. Now, does that even allege that that that she told FEMA this is why I have this big debt? I believe that is alleged in the next paragraph. I think it's sort of undermined by the next paragraph. Her explanations are supported by her credit report. But. Oh, this is visible to defendants, personnel, security officer, she's saying that the credit report showed the defendants, but it doesn't show the reasons that she's inserting. Right. And that is that is accurate. The those are the few sentences that that bear upon the issue that we're we are discussing just to probe this a little bit more. So. Her view is that this is enmeshed with. The past discriminatory action on FEMA's part and her opposition to it. Because it is her view that the reason she's in such deep debt. Is that the prior case has not really been resolved and that she is complaining that the prior case. Has not been satisfactory result, and therefore that's her opposition to the defendants on lawful conduct, and that is the locus of their retaliation against her. Yes, yes, that is correct. Her the over the overall. Arching theme that she presents is that this is a coordinated concurrent act that, you know, you can't really separate the two. Everything started with this 1st complaint in 2005 that led to her being demoted. Led to her being in a financial state that incurred such debt throughout the, you know, decade and a half that followed. She worked with several attorneys. She worked with FEMA to get that issue resolved. It never, it never really was. Allegation that when Miss Farrington obtained a favorable resolution of her dispute with Chase, that she communicated that to FEMA, basically saying, you know. They were wrong. I was right. And that's been resolved. I believe that was communicated in her appeal of the termination that came in 2015. She explained the debt's been resolved. This is the reason for the debt. And again, reiterated her discriminatory allegations through that written appeal. But that was obviously after the decision had been had been made to terminate her employment. So, to the extent, I guess I'm just trying to understand to the extent that the and I take you to acknowledge that it's legitimate for FEMA to have the credit check that is otherwise a legitimate non-discriminatory criterion. Sure. And that she didn't meet it at the time when they're reviewing her. Yeah, yeah, that's correct. And on the report that FEMA was able to see, it said that it was in dispute. So, so, so they they had an understand they have the right sure to to conduct this background check as part of of their standard business practices that they were aware, though, that this was a debt that was in dispute. And she it wasn't just that she went and put her hands up and let them figure it out. She did communicate. This is why I'm in this debt. This is why, you know, maybe perhaps, you know, hindsight is twenty twenty. She could have been more explicit at the time. But looking from where we are today, what you described is is accurate in terms of the time frame. Do you and there's nothing alleging that she told them that because what she'd already been paid was still in dispute, that she didn't feel free to spend it. And I don't know what they did know. I've given you a few hundred thousand dollars over a short period of time that's gone to zero. And you have this debt. And, yeah, you're saying it's the bank's fault. But how often do people prevail against the bank as it happens? She prevails against the bank. And as it happened, you give an explanation why notwithstanding that she had a large sum of money, that she's nonetheless running a major debt. But I didn't see allegations that that they knew that. I think that's correct. I don't know that she communicated her. Plan not to to spend the money that was was given to her. However, it's been subject to, I want to say, a dozen litigations over the course of the last 10 years in district court. So maybe at that moment, they were not aware of what the plan was in terms of the money. But certainly within a year, litigation ensued and it became clear that that money was very much in dispute. So in your opening brief, you framed a version of this as that the FEMA stated reason for firing her was pretextual. The government pointed out you didn't raise that type of argument below and you didn't respond to this point in the reply brief. So I just wanted to ask if you are do you have any dispute with the government's position that you forfeited this or you otherwise abandoning that version of the argument? Certainly. So we did raise that in the opposition brief at the district court level. It's cited in the Joint Appendix 101-102. The district court cites the three additional arguments that we make the pretext and lists those three arguments. So we are not forfeiting those arguments. In fact, I think the pretext argument is stronger than maybe the temporal proximity argument and the fact that they did not the agency did not terminate Miss Farrington for two years after she was found to be unfit for service. They could have maybe they should have terminated her as soon as they got that fitness, the negative suitability determination. But they waited two years. So that begs the question as to did they reasonably believe that just because Miss Farrington had that debt that she was unfit for service? That I think that's a question of that goes to pretext and it goes to to credibility. However, to your point in the briefs before your honors, temporal proximity was was the large focus of of the arguments. I heard you say that the district court thought you had made an argument based on the delay, the two and a half year delay in firing her based on the fitness determination. Yes, that's correct. And it's in our it's in the amended complaint of paragraph thirty seven and thirty thirty seven forty. Yes, I'm asking about I didn't see it in your opposition to the motion to dismiss and I didn't see it in the district court. So you're you were directing me to one oh one and one of two. And I don't see them addressing this. Sure. So it's at the bottom of one oh one into one or two where the district court goes into the three arguments that were based on on pretext. I mean, I will say it's not a lengthy analysis by either the district court or by Miss Farrington in the lower court. But we do preserve we do preserve those arguments and think that there are some merit to them that would warrant the case to move forward to discovery. If the district if if your honors would reverse and remand the district court decision. Thank you. Right. Mr. Walker. Good morning, your honors may please the court, Johnny Walker for the secretary of Homeland Security. The district court correctly dismissed Miss Farrington's retaliation claim because her complaint draws no causal connection between the protected activity that she began in two thousand and five. And her eventual termination a decade later in two thousand and fifteen. She acknowledges in her complaint that a routine background investigation uncovered that she had sixty five thousand dollars in delinquent debt to her mortgage lender. And that this led to a determination by FEMA's personnel security staff that she was not suited to continued federal services. She provides no plausible allegations that would indicate that her later termination was anything but the necessary consequence that unsuitability determination. For that reason, she has not established the causal connection between protected activity and adverse employment action that this court's case law requires. And the district court's order dismissing this case should be affirmed. Answer any questions the court may have. I mean, isn't it readily apparent that she was challenging and that there was even other litigation involving whether FEMA has complied with the prior relief that she had obtained? There was certainly ongoing litigation dating back to 2005 that continues to this day in a case in the district court over that initial 2005 discrimination complaint. But what she does not allege is any particular protected activity by her during the course of that event that was proximate in cause to the adverse employment action. But isn't that I mean, she's opposing an unlawful employment action and she's continuing to oppose it because she's saying it hasn't been fully remedied. And I guess it seems a little semantic to say, well, she's not opposing any unlawful employment action. She got an award and she's saying, you know, in her view, it hasn't been fully remedied. So that is ongoing opposition to and not yet fully remedied unlawful employment action. No, it is certainly ongoing opposition, but there's no temporal proximity to a specific act that would give rise to an inference of retaliation. So what this court looks at temporal proximity to her then being fired. The temporal that the being terminated needs to be temporally proximate to some particular protected activity, ongoing opposition to the agency's failure to, in her view, fully remedy. The established unlawful conduct of the agency in the past, but what this court's cases look at is temporal proximity to some particular action by the individual such that they're not some ongoing action. No, not some ongoing action. It doesn't have to be the initial discrimination. You know, somebody is harassing someone over a period of time. I mean, that's ongoing. And the fact that it began more than 10 years ago wouldn't mean that there's no temporal proximity. Well, it would have to be temporal proximity to some particular oppositional or otherwise protected action. And you don't think that maintaining a claim is a particular opposition? No, Your Honor. And that's not what the cases look at. If you take a look at this court's recent decision in Ho versus Garland, I mean, there was ongoing litigation there. And the court drew temporal proximity to the filing of an actual formal discrimination complaint. And I think there's very good reason for that, because when you have this ongoing decade long course of background litigation and the agency takes no action for a decade and then terminates her a decade after that has been ongoing for 10 years. The opposite inference has to be drawn that there is some other cause that gave rise to that termination other than the ongoing background litigation. I appreciate your your suggestion that an opposite inference needs to be drawn. It's an opposite inference might be permissible by a fact finder. But it's hard for us sitting here to say which inference in this complicated, thorny, ongoing contentious relationship, which inference to draw. Well, I think you have to think about sort of like the underlying reasons why the court draws an inference from temporal proximity. And the reason is because a supervisor becomes aware of protected activity and then suddenly takes an action within a very short period of time. This court generally says within three or four months, it's inconsistent with the supervisor's prior actions. And so there, when you have that kind of temporal proximity, there's a reasonable inference that can be drawn that that new knowledge was the basis for the new course of activity. Here you have ongoing litigation that's been in place for over a decade. There's no reason that these personnel security staff members and HR staff members suddenly gain knowledge of this at the time that they took the actions. In fact, the only allegations about knowledge that Miss Farrington alleges is that these individuals may have known about this because FEMA was required to post it throughout its offices after she obtained her award back in 2008. So there's no sort of like sudden change in circumstance or sudden gaining in knowledge that this should work. If it said hypothetically at about this time, Miss Farrington filed an opposition to motion for summary judgment. And then the supervisor became aware of that. And then you maybe you could measure temporal proximity from that. Is that what you're saying? We need some kind of specific protected activity allegation. Yeah, it could be. I think you need some kind of specific protected activity allegation. The fact that there's just ongoing background litigation, I mean, then the two or three month benchmark really means nothing. Right. Because there's she's engaging in litigation over the course of a decade. There's always going to be the two or three month. But there has to be an event followed closely by an adverse personnel action. Kind of counter to the old adage that revenge is a dish best served cold. Exactly. I think so. I mean, that's the opposite notion of that is precisely what the temporal proximity inference is built upon. I think the fact that there is a change in circumstance, that there's a knowledge of protected activity and then followed closely by a change in circumstance here. As alleged, there is knowledge dating back to 2008 and no change in circumstance until 2013 when she's deemed unsuitable in 2015 when she's removed. What about that two year gap? It's a little hard to understand. Miss Farrington argues that the adverse fitness termination is seized upon as a pretext to terminate her. If they really cared about it, they would have done it earlier. What about the two year gap? I don't think that I understand two years seems like a long time. It's not such a long time when it comes to federal personnel actions. She certainly hasn't alleged anything indicating that the amount of time that it took was atypical or delayed for any improper purpose. And I think that the only inference that you can be drawn that can be drawn from the amount of time that the agency took to finalize its action is that this was not being used as pretext, that the delinquent debt was not being used as pretext to terminate Miss Farrington, because that amount of time just gave her additional time in which to resolve her debt and bring that to the agency's attention. So why is that? I mean, it's the exact same amount of time since her undisputed last protected activity, which is 2012. And you're saying it's plausible that her argument is the fact you waited two and a half years means you didn't really believe in the reason you gave. No, no one actually cared about this lack of fitness determination. And there seems like there's something to that. Why would you let this person continue having access to government systems, et cetera, et cetera, for two and a half years? Why isn't that a plausible interpretation of what what's going on? Well, again, because she has not alleged anything that would indicate that the amount of time was atypical or otherwise delayed for any proper purpose. As we note in our brief, she doesn't know that she is a temporary employee with FEMA. She's a reservist. So she is deployed to various disaster situations when the need arises. And as we note that she has not alleged that she was actually deployed by FEMA between the time that she got the initial letter of concern. I think she did between the letter of concern and the actual unsuitability determination. But after the unsuitability determination, there's no allegation that she actually deployed for FEMA during the period of time between then and her termination. She wasn't actually in the ways that we would think of, like going to work or having access to a FEMA credit card. She wasn't actually in a position to use the. I think she does allege that she received a FEMA credit card. Her credit worthiness is a completely different inquiry from her suitability, that the government doesn't extend the line of credit. So whether or not the contractor that the government uses to provide government credit cards, solve it to extend the line of credit to her is a completely different inquiry from whether or not she is that the delinquent debt allows her to remain suitable for federal employment. I guess she does not dispute that that that a delinquent debt is a factor in suitability to federal employment. She's not dispute that her debt was well over FEMA's debt threshold, and she does not dispute that that type of unsuitability determination is grounds for removal. She does. I think she alleges that she participated in some paid trainings between the time of the unsuitability determination and the time that she was formally terminated. Is that, how can we not see that as supporting her notion that FEMA didn't really, wasn't really alarmed by this? Yeah, I think participating in unsuitability, that's yours. Again, the real reason that the delay is not grounds for FEMA not taking it seriously is because she has not alleged that it was atypical. But in addition, I think that that participating in some paid trainings, getting paid to do a remote training or something like that for FEMA is completely different in kind from being deployed and holding yourself out as a federal employee. The suitability determinations are to ensure that the public views its federal employees as possessing integrity, being efficient, and so allowing her to do a training would not. Why would we think two and a half years is typical? I mean, literally what happened here is a new supervisor came in, and maybe she was doing everything right, but it took her four months to discharge her based on this lack of fitness finding. Yes, but there's no allegation that the new supervisor, and that's where I understand her argument about the delay to really come into play is that it is that it shows that she was terminated at the first opportunity by this new supervisor. But she doesn't allege anything indicating that that new supervisor was the impetus for the termination or that the new supervisor would have any reason to be possess retaliatory animus against her. Certainly, the supervisor was not involved in any way or implicated in any way in the prior protected activity from 2005 over a decade ago. In fact, she alleges exactly the opposite. She alleges that a representative from the human resources department named Ms. Silva contacted her supervisor and advised her that she needed to terminate Ms. Farrington immediately due to the unsuitability determination. Why is it that this litigation, the underlying litigation has been continuing for so long? 2008, there's an order that can't be resolved? I'm thankful to report that in the last status report, the parties have reported that they have finally resolved their dispute about the back pay. There's some additional details to work out. But the reason that it lasted so long, I think, is that there was some remands to the EEOC to clarify some of its orders. So you had a whole another round of administrative proceedings that took place after that. And then the parties went back to district court after that. But that is a long litigation. The government is happy to see it coming to a close. Thank you very much. Please. Please have any rebuttal time. I'll give you two minutes. Thank you, your honors. And I'll just touch upon a few points. First is in regards to the two-year period. I do think that is very crucial, or two-and-a-half-year period. I think one of you were referring to joint appendix page 11, paragraph 34. And that sort of describes that two-and-a-half-year period where Ms. Harrington was receiving requests for deployment, regardless of whether she actually did deploy, participating in trainings, and was listed as available for deployments in the agency's system. So in my experience in the federal sector, as soon as someone becomes found to be unsuitable for federal government employment, typically the removal action happens relatively quickly. So the two-and-a-half-year period is something that we think is extremely relevant for the court to consider. A second point is the fact that there was a new supervisor who did act at the first opportunity within four-and-a-half months of becoming her supervisor. And I just want to point out that we have now discussed temporal proximity. We have discussed that the proffered reason is unworthy of belief. We have discussed the supervisor change in the first opportunity to retaliate. We have discussed the knowledge that all of these agency officials have had of her ongoing EEO activity. So based on all of those factors, either taken separately or better taken as a whole, we believe that Ms. Farrington has alleged more than sufficient facts to withstand the motion to dismiss stage and allow her case to move forward to discovery to really flesh out some of the factual questions that still remain in dispute. Thank you. Case is submitted.
judges: Pillard; Wilkins; Garcia